Counsel, you may proceed. Good morning. May it please the Court, Counsel, my name is Reuben Iniguez. I represent the appellant, John Williams, in this matter. With the Court's permission, I'd like to reserve at least four minutes of my time. You may do so, Counsel. Just watch the clock. The issue presented in this case is one of first impressions of the circuit. At its heart, it's an issue which concerns federalism, namely the federal-state balance in the prosecution of crimes. Well, the federal government in this case is seeking this Court's approval to extend the honest services theory under the wire and mail fraud statutes to a case that this circuit has never applied before, that is, a matter that involves a public corruption. All right. We're on the 1346 issue. Exactly, Your Honor. Mm-hmm. There is a public-private dichotomy in this line of cases with respect to the intangible right to honest services. Counsel, I have in some other circuits held, I think the 11th and the D.C. Circuit and perhaps others, that if there's a fiduciary relationship involved or something like that, that this statute can apply between private parties. Not with respect to the issue here, Your Honor. Even, yes, this circuit even, in the Frege case, the most recent opinion published by this circuit with respect to this matter, approves the intangible right of honest services theory. That was a public corruption case. Now, the 1980 case, which does stand for the proposition that in a corporate employee disloyalty case involving corporations and an employee, yes, the fiduciary responsibility, those fiduciary cases can be applied. But there are no cases from this circuit or other cases involving purely private individuals. Those cases all involve labor unions, corporations, employers and employees. Well, that's private. Counsel, labor unions, I have two questions about that. One is, while historically the deprivation of honest services has traditionally been used in public corruption cases, the language of 1346 does not on its face make any distinction between public and private. And second, in the precedence that you cite about how it's been used, if tradition alone were enough to limit the reach of a statute, a lot of them are not public. For example, a labor union is not a government agency. So, I don't get it. I'm wondering why Frege and the language of the statute isn't the end of that argument. Your Honor, you're perfectly correct with respect to the history of this doctrine. And I think it's a confused one that requires, to answer the Court's question, requires some explanation of the history. Now, in the 117 years of the Wirefrat statute, before the McNally case, this was a judicially adopted doctrine. And Judge Stevens, in his dissent, joined by Judge O'Connor, set forth the four categories that historically, in those 117 years, the courts had applied this doctrine. Two of them are public and government corruption categories. The other two are private sector categories. The fourth category has no application here, and that is the privacy cases. The Louderman case from 1978 from the district circuit is a privacy case. Now, that case and those cases, those privacy cases, have been disregarded by, for example, the Rybicki and Bonk panel, noting that that's not really an honest services case. The case never dealt with honest services. It's a privacy case. The category that we're dealing with here, Your Honor, is category three. Yes, labor unions and corporate employees. The plain language of the statute … I'm not sure that we are. Let's look at the language of the statute. It says, for purposes of this chapter, the term scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right of honest services. For us to accept your argument, we would have to interpret the word another to exclude private individuals. And that seems to me a grammatical stretch, a verbal stretch. Your Honor, of course it's elementary that we always start with the plain language. I would first note that this Court in Frege, 1999, the last public decision, went immediately to the legislative history, as have numerous other circuit courts, because that language requires interpretation. It is not plain on the face, and many circuits have grappled with this difficult issue of what does that mean, to deprive another, and does it mean another corporation, employee, citizen? Does it mean an individual? And courts have grappled with that issue. Because of that, this Court turned to the legislative history in Frege, and I would point the Court to footnote seven at page 802 of that case, in which it discussed Senator Biden's testimony, in which he said that this bill will make it possible, once again, to prosecute and send to prison those public officials who corrupt their office. Is there anything in the legislative history that, even if we were to accept that as a sufficient basis for limiting the language, where the congressmen and congresswomen are, to deprivation of the law, to deprivation of honest services to individuals? Two responses to that. I mean, that Biden quote that you just gave me says, what good boys we are, we're just wonderful. We're curing a Supreme Court error by making sure public corruption cannot be penalized. It doesn't say anything about we're avoiding extension of the statute to private fraud. Your Honor, it not only says that it applies to public officials to reinstate that prior doctrine, but it also says that it is now a crime, again, for anyone who attempts to corrupt the election process, amends the existing mail-in wire fraud statutes to make clear that notwithstanding the holding McNally, it is a crime to deprive any organization, such as a corporation or a labor union, of the loyal services of its employees. You know, if that's what the statute said, if it said those words, then I would be inclined to apply the statutory interpretation principle of a justem generis and exclude individuals. But the statute doesn't say that, and it's hard for me to get it into that limitation into the word another. Well, Your Honor, if I may then give you the second response. It's not only that the legislative history that this Court has specifically relied on in the past, and other courts have relied on to interpret this section, but I would say that the fact that they're pointing out what it does apply to, there are numbers, numerous other things that it could not apply to that would be too innumerable. But I would say this also, is that the McNally case, McNally is also always cited for the so-called accountable or penalty sanction for depriving citizens of good government. But there were two defendants in the McNally case. McNally himself was a private individual. Gray was the public official. And if you, what the courts have said is that you have to go back to pre-McNally law to determine what this means. Gray itself, and I quote Gray at page 18 of my reply brief, says, and the point of this is to say that McNally reversed the Circuit Court's opinion in Gray and McNally. And when you then by Congress reinstate the prior law, which would be Gray, the Sixth Circuit's opinion in Gray, this is what the Court has to say about pre-McNally law. Misconduct of a fiduciary in the administration of exclusively private matters in his capacity as a private individual, which does not involve the misuse of public office or public trust, is not actionable as a violation of the mail fraud statute under an intangible rights theory. That was pre-McNally law. Now, when Congress resurrected, reinstated the law, that was what the law held. MS. BENTON. Counsel, is there any post-McNally Circuit Court case that adopts the theory that you are asking us to adopt? MR. GOTTLIEB. There's no case directly on point, Your Honor, with this purely private transaction. And we have to ask ourselves, why? Now, what happened in this case, if we look at the case, and that's what the government is asking you to do, to save its case. This case was originally brought under 1341 and 1343 alone. It was only when the statute of limitations five years later was looming and the government realized, finally, that its witness in this case was not competent, was not available to testify, that the government, after the complaint, after the indictment, finally filed a superseding indictment raising this theory. Why? Because it had nowhere else to go. It was stuck. And as the prosecutor himself mentioned in the district court, he'd never seen in all his time in the District of Oregon an intangible rights theory case brought. Why? Because as Judge Hogan noted, that it's always better to have direct misstatements and proof of actual fraud. The jury gets that. This simply doesn't apply. That's why there are no other cases. MS. KAYE. Well, they had that in this case, too, as it turned out, didn't they? MR. GOTTLIEB. As I say in my brief, Your Honor, I think I would respectfully disagree with any assertion that there was proof of actual fraud. I think, A, the prosecutor himself was admitting that he had no direct misstatements of that. He did not. The only evidence you had, and I'm stuck with it here, unfortunately, is the video deposition, which shouldn't have come in. It was not relevant. The gentleman, five years after the fact, was clearly, if you look at that video, incompetent. There were proffered issues that should have been raised, right to confrontation. Without that witness, there was a stipulation by defense counsel to let it in. Without that witness, there was no case. But when we look at that deposition video and what he said, there are two omissions of fact that the government points to. The fact that he could not remember a joint bank account and that he could not remember the post office mailboxes. That gentleman, Your Honor, and I have a lot of sympathy for Mr. Stubbs, as you can see from that video. He couldn't remember anything. The gentleman, by that point in time, had deteriorated naturally. He couldn't remember his age. He didn't recognize Mr. Williams, who he knew. He didn't recognize other people. When asked who he would give money to, he asked the prosecutor, you wouldn't want it, would you? So that has stayed in mind five years later. This gets into the other issue of the vulnerable victim enhancement. But it's just not relevant. They had no proof of actual fraud. That wasn't the theory on which they proceeded. They proceeded on two theories. This one's invalid. And all of these, for that reason, counts. It should fall. With respect, going back to your question, Your Honor, no circuit courts have addressed this, but again, we have a Supreme Court case that does deal with the issue. And although it's a dissenting opinion from Judge Stevens with O'Connor joining him, that is the best summary on which many other circuit courts have relied for establishing what was pre-McNally law, those four categories. If we were to determine, contrary to your argument, that there was sufficient evidence under both theories, and if we were further to determine that you're right about the law, what would the answer be? Would that be a reversal or a reversal for a new trial on the regular fraud theory? Or what would the relief be? If I may restate Your Honor's question so I understand it properly. So if you find that they proceeded on both theories and one theory, the intangible rights theory, is invalid, what would happen? But that there was evidence to support both. That's the additional. You have argued that there's not sufficient evidence on a regular fraud theory. And my hypothetical disagrees with that assertion. So two theories, one valid, one invalid, but plenty of evidence on both. What is the proper relief? If there are two theories and one is invalid, Your Honor, even if you found sufficient evidence of actual fraud, if you found insufficient evidence, let's say, of the honest services theory, but you found that it was invalid, as I argued, and I believe I'm looking for the case, but I believe it's either Griffin or Griffin that would require reversal on all counts because the government proceeded clearly on two theories. But new trial or no new trial? That's what I'm trying to get at. It would be reversed and vacated. It would have to be reversed and vacated under the Supreme Court case, as I say. Wouldn't that lead to a new trial? Excuse me, Your Honor? Would there not? You said something before that made me wonder if there would be a new trial. If I understood you right, you said the statute of limitations barred prosecution for taking the old man's money. So the only thing that they could prosecute for was depriving the old man of honest services. Is that — did I understand you right? They were — what I indicated, Your Honor, is that they were approaching the statute of limitations. The gentleman's deposition was taken. Approaching? Yes. The statute of limitations is one of those things. It's not like horseshoes. You're either on the right side of it or the wrong side. Were they on the right side of it for stealing the old man's money? They were weak on the right side. December 22nd. A week is — December 29th. All right. So there's no statute of limitations. No statute of limitations, probably. But I don't think you've answered either of my colleagues' questions with respect to what is the effect of a reversal. Does that mean double jeopardy, no new trial, or are we, in effect, sending it back for a new trial? The case is Griffin that I was referring to, a 502 U.S. 46 in 1991 Supreme Court case. It would require reversal and vacation of the convictions. Double jeopardy would apply. The federal government would not be able to prosecute him. It would be an opposition. This should have been originally a state matter. This is a state matter. And those — that's the state of Oregon, is the appropriate and effective tool. I don't understand why double jeopardy would bar prosecution. It seems like just a routine reversal where the jury is instructed erroneously and gets the case again. I've certainly — well, I would respectfully disagree, Your Honor. Explain it to me. Just educate me. Well, the gentleman has been convicted of these offenses on an invalid theory, even if, assuming — That happens whenever we have erroneous jury instructions. Well, then if the government, Your Honor, could retry him, it could retry him on the actual fraud basis. As I say, I don't — You mean fraud for money rather than honest services.  They would need direct statements of fraud, and they would need proof that there was actual property, money or property taken. But they — it seems — I don't understand why — suppose we accepted your McNally theory. Yes. And we said, well, another doesn't include a private individual. So a prosecution for fraud by depriving an individual of honest services is — doesn't charge a crime. It seems to me that they could go back and charge the financial planner with fraud by stealing the old man's money and taking it to Belize. Right. And they may be able to do that. I don't know. As I say, the deposition was taken a week before the statute of limitations ran on the first relevant event. There may be a statute of limitation as to subsequent events that were after that date. I just don't know. If you're asking in terms of the extent of any other prosecution that could be forthcoming if this court reversed on this ground, I'm just not sure where we'd be on that. Counsel, you're below three minutes. You indicated an interest in reserving time. Thank you. Okay. Please, the Court. My name is Chris Cardone, and I represent the government here, as I did earlier in this trial. It's a pleasure to be here this morning to argue the case, and I'd like to proceed first. To the nature of the questions that the Court asked counsel concerning the reach of 1346. And 1346 is plain on its face. There is nothing, as the Court has pointed out, limiting the application of intangible rights, the honest services theory, to the corporate setting or public corruption setting. The language is plain. It's far-reaching, but it is plain. So is it your position that any time, let's say I hire a plumber to come do some work in my house and I feel that somehow it isn't honestly done, how far does your theory go in asserting that Congress intended to cover that kind of activity? Judge Graber, your question precisely raises the issue that several courts that have addressed this theory have asked. How far are we to go as a court? We're uncomfortable. We can see it applying in certain situations, but how far are we going to go with this? Do we have any Ninth Circuit cases? You're referring to out-of-circuit cases? I am. There are eight circuits, Your Honor, that have spoken on this issue unanimously. They're cited on pages 28 and 29 of my brief. None of them are Ninth Circuit cases that come after the 1346 passage of the promulgate. But, Judge Graber, getting back to the question, is the government going to be able to prosecute an employee for making a long-distance phone call on a corporate dime? And courts, understandably, are very hesitant to allow the government to criminalize something like that. What the courts have done, eight circuits that have spoken, have imposed limitations in generally three areas. First of all, they require a fiduciary relationship between the defendant and the person who was victimized. Second, the materiality requirement. Picking up on the Netter case, but also in many of those cases, the court wants to know, was this breach a material one or a diminished one? And in the phone call situation, Your Honor, I would suggest that it was a diminished one. But also, and very critically to these cases that these courts have spoken on, they want to know whether there was a risk of economic harm imposed in the situation. Not actual harm, but whether there was reasonably foreseeable economic risk. Counsel, I am troubled by reaching farther than we need to. I was puzzled that the indictment even charged the financial planner with depriving the old man of honest services, since the financial planner also deprived the old man of several hundred thousand dollars. It seems like there's an easy way and a hard way, and the indictment may be responsible for the hard way. And I'm even more reluctant to reach out and issue a whole lot of dicta on plumbers and fiduciaries and employees making personal phone calls. I mean, on the one hand, you say a plumber, and I'm thinking somebody coming to fix my sink, and it's a real stretch. On the other hand, I'm thinking a car repair outfit that fixes hundreds of cars and says to people, oh, we're doing this and we're doing that to your car and fixing all these things, and they're just lying. And maybe it's warranty services, so they're actually depriving the manufacturer of money, but the customers think their cars are fixed when they're not. It wastes a lot of time. It seems like some of these are real questions, and we don't need to answer them. I don't get why the jury was asked to answer the question of whether the defendant deprived the victim of honest services. Am I missing something here? Mr. Kleinfeld, the question goes to the charging instrument and why I chose the government's prosecutor to implement alternative theories. I was hoping it was simple, like statute of limitations, but it turns out you were weak on the right side of it. I was on the both sides of the statute, the right side of the statute in both theories. But getting a little bit outside the record and getting into my discretion as a prosecutor, the reason I chose to implement this theory is because the health of my only victim. The defense in this case, Your Honor, was this was a gift. This old man trusted me. He wanted me to have his money. That was the defense coming into trial that was raised in the opening statement and so on and so forth. I knew that coming into trial. I also knew coming into trial that health of the only witness that I could call to say that that was not so directly was at that point a 92-year-old man who was clearly suffering on the way out. Knowing that, I superseded. I asked the grand jury to consider the alternative theory. We got the alternative theory, and we proceeded on. So the reason that was part of the indictment at first is because that was a tool available, in my opinion, to the government where you have somebody with a clarified judiciary obligation to the client who abused that to steal his money. But second of all, I was concerned about the health of the victim. I didn't know what he was on. I see. So the idea is to protect. We need the honest services to protect senile victims so that where the prosecutor cannot show that it's not a gift, nevertheless, he can show that a fiduciary in that position cannot honestly accept gifts. There's a whole class of senile people that are likely to be victims of crooks. Have I got this right now? Well, specifically as applied to this case, yes, you do. The problem I have … You understand why I put it that way. We can't make a decision in this case based on things that are not in the record, but the understanding that you've given me about a potential class of victims can be a basis for consideration. Counsel. Yes. I'm sorry. Please finish answering, Judge Kleinfeld, then I have my question. Thank you, Your Honor. The situation specifically applied, yes, you're right, Hon. But more generally, when you have a fiduciary relationship, whether it's a group of senile old people, to use the court's term, or a class of other people that also have fiduciary relationships with other people, stockbrokers, employees of a managerial nature and things of the like, I wouldn't limit it to old people, but I would focus and ask the court to focus, in its consideration of the 1346 application, to the fiduciary relationship and the duties imposed on them based on that. Counsel, my question is, in a sense, a follow-up to Judge Kleinfeld's initial question, and that is I'll pose the same thing to you that I posed to opposing counsel. If we were to conclude, in accordance with the defendant's argument, that the theory is not valid, but we also were to conclude that there was sufficient evidence under both theories, what would happen? And if your answer is the same as his, then we can't avoid the question. Do you understand what I'm saying? I do. Okay. And I think this court must answer the question of whether 1346 is properly in play in this case. And that is because the Griffin case, as I understand Justice Scalia's opinion from the Griffin case, that when you have two legally competing theories that go to the jury without a special verdict separating them, and there's a general verdict, then a defect in the theory, the legal theory on one of them is going to cause an entire conviction to fall. And that's because it's possible that the jury convicted the person of a non-crime. Yes. And you don't know otherwise because there's no general, no special verdict. That's correct. Okay. But, Your Honor, I hope you never get there. The application 1346 is solid in this case. My question really went to whether we could walk around the issue. Do you agree with that point? It sounds like you both agree. Mr. Onega suggested there was a federalism issue here. Could you have brought the same indictment against the plumber? You heard the plumber example. Plumber comes into your house, doesn't fix your sink the way it should have been fixed, or charges you too much? Is there a federal indictment available? No. Why? I second that. If the court follows the strength of the theory of language used by the aid services and the direct interest institutions, since 1346 is common law, the court is concerned it's going to be just like that. You can't have the government overprim the last time. But what's the bright line? What's the dividing line? Why is it perfectly okay to bring this case involving two individuals in the same city, same state, no assertion of interstate commerce as the theory for it? Why isn't that any different than the plumber case? Well, the plumber might mail his bill. Right. The plumber might mail his bill. Yes. But as a matter of law, what I said before, we could go out to the plumber and give him the limitations imposed by the aid service that I spoke of five years. There's no five-year relationship between you and the plumber. The plumber does not have dominion over your finances, control over you. All right. So it's limited to employer-employee. We've got a case there. Also, fiduciary relationship. But nothing beyond those two except, of course, the public situation. Yes, and the other limitation is the periodicality of the breach and foreseeable economic harm. All right. May I address Mr. Evers' attempt to distinguish the five-year inspector application with respect to the second circuit? Here, we have a purely private relationship, and we're asking the court to go even further. I respect the decision. If the court votes that footnote 17 of the right-of-way case, the second circuit case of recent history, that is, in my opinion, is an on-office issue since 2003. So the second circuit is a major issue in the coal corporation. The footnote 17 of that case, the second circuit, saw no difference between employer-employee relationship and corporate relationship. And that is, in my opinion, is the nature of the relationship to duties and overs, to duties and overs, that are important. There's no distinction between employer-employee relationship and others. I don't know if the fiduciary distinction would work in any event. That's why I'm reluctant to reach it. The fiduciary owes the beneficiary the punctilio of the highest honor, in Cardozo's phrase. He owes an especially high duty, but even a non-fiduciary probably owes the duty of honest services. If you have a cleaning lady that comes to clean your house once a week and you leave out the key and you send her a check or leave the check outside with the key under the doormat, and she comes by and takes a check and doesn't come in and clean the house, she probably owed you a duty of honest services, at least to that level of honesty, of coming in and doing some cleaning. She's not entitled to just lie to you and cheat you. Even though she's not a fiduciary, she's about as far from a fiduciary as she can get. Yes, Your Honor. But to decide this case, it's important for me to only say that a fiduciary, not that it's necessarily required, but that where you would have a fiduciary relationship, which is so important, especially when you're dealing with an 87-year-old man and you're dealing with a fiduciary. Now, when you have that type of relationship, obligations are dramatically tightened. And when one goes to the level that this man has created secret bank accounts, corporate offshore accounts, and uses his powers as a fiduciary to overcome the underlying difficulties, corrupt the fiduciary products, and steal over $400,000, send it down to the police, assume a false identity, and go live on the beach, that certainly is conduct that comes within this notion of a fiduciary right on services. And that's all important to decide the firm of conviction. Could this case have been brought under a state indictment in the state court? I've never been a state prosecutor with this case, so I don't know. But I will tell you this. You get a state of Oregon in this climate of hunger, you need to consider a white collar case where it was difficult. Well, it may not matter to our decision, but don't you think that a theft of that magnitude of a victim, that vulnerable, might have interested a state prosecutor? For that. But as you know, we have a huge number of white collar cases here. White collar crimes, white collar devastation, it's a magnitude. This requires reaching out to the region to try and get evidence. This requires powers that the state of Oregon would have if this is a case we needed. Federal investigations tend to take a fair violation of the actual qualifications of male prosecutors. And, as I said, coming into the trial, they often also can't go right away. So, could it have been brought under a perhaps an aggravated death penalty? It could. It happens to be my experience. Now, if I might also address another issue. The vulnerable victim, and some of the other counsel attempts to state that all I had going on was proof of the potential white collar violation. That's simply, in my opinion, with respect to counsel, it's true. The case I have submitted to the court, 40 minutes long, I've asked the court, if it hasn't reviewed it, to consider reviewing it. We had proof of actual fraud. Not actual fraud in the sense of having the victim point at the defendant and say, that man fraud is what we ought to do. But, we had proof of material omissions of facts. This court, every other court that I've known, lies to the level of actual fraud. I asked, during that deposition, did you ever tell that fellow, John Williams there, that you wanted him to have both months, both evenings? The answer, hell no. Hell no. No. Why not? Well, I would. Damn it. I don't want some of the family to have him. Not him. I went on. Did you know what the bank account that John Williams opened up with you and him? No. Did you know what the post office box that he opened with your name? No. No way. And that's at page 54 of the extracurricular account. Now, say what you will about Mr. Stubbs and the state of his health when you took that deposition. But if you watch that tape, it is clear that Mr. Stubbs was just a man on the way out. But on key points like this, he acted with certainty. The jury saw that tape. The jury was loud. I've got to ask you, when you say you said it twice now, on the way out, are we talking about mental condition or physical deterioration? Obviously, you're suggesting that at least so far as these statements are concerned, they were lucid and knowing. But when you say on the way out, you mean that he maybe didn't have an expectancy of living much longer? Or what? Help me with that. He was sort of lucid, competent, in the ability to recall some of it. First of all, this was received well-read. And he got forward to file Mr. Stubbs on 12th and 15th of January. We had a jury on this Sunday that followed, especially when we accepted the agreement of the parties that he was unavailable to file, and also the further stipulation that the tape would be received in lieu of actual testimony. But what I mean by on the way out is it is clear that this man was suffering from memory loss. His mental health, of course, was deteriorating. But his physical health was as well. You wouldn't believe that, would you? We took his record out of his house, and we tried. He was physically unable to attend himself in most cases. But his mental condition was not sufficient that we should be skeptical about his responses then. Well, I think the case speaks for itself on that issue. No big challenge. He is in tough shape. But again, on the policy that I just reviewed, I believe that it's very good. The jury was entitled to take that. But the incompetence with his name and not telling you what he was doing was not going to work at all. Remember, there's just one other issue that I'd like to point out. If you were doing this for any reason, I might add that it's a very good job of briefing you on that. On account as well, a challenge to account as well, he claimed that causing someone to transport money is not within the meaning of the 2314 statute. There are cases in this circuit which I did not cite in my reply to him, but they were raised in his reply. This court has held that Section 2B is implied in every criminal statute. And that is, someone who looks as the principal if they cause a criminal act to occur, whether it's a dating event or as a principal, 2B is inserted, and one-sided action could be appropriate to the person. By now, it would be like a letter. Well, sorry. Well, if you have the citation, why don't you make out a gum sheet which our deputy clerk will provide to you in three copies so that everyone gets...  Thank you, counsel. Mr. Reynigas, you have some reserve time. Thank you, Your Honor. Your Honor, I'd first like to point out that the government here, in arguing that the Statute 1346 is plain on its face, is taking inconsistent positions in this case. It should not be allowed to do so. I'd cite the court to my supplemental excerpt of record, page 5, where the government prosecutor indicates to Judge Hogan, what does intangible rights mean? Intangible rights to auto services. I'm not sure that that phrase really has any common-sense meaning. And that cries out for a little bit of an elaboration from this court. They're taking an inconsistent position here and should not be allowed to do so. They're also relying on what Mr. Cardone keeps referring to as eight unanimous circuit court opinions. And I would point the court respectfully to my reply brief at pages 15 to 16, where case by case, I address those circuit court opinions that he cites in his brief. None of those deals with the situation here, a private individual, private individual transaction. They are all corporate labor union kickback bribery cases or public official cases even. One of them doesn't even involve auto services. I thought there was a lawyer case, too. Excuse me? Isn't there a case involving a lawyer as well? Yes, yes. And that case doesn't even involve  How can we interpret that? Nowhere refers to auto services doesn't involve intangible right theory, Your Honor. That's the ultimate case that he cites. How can we interpret the word another to mean that Congress meant to protect corporations, unions, and other entities, but not the people as individuals? Your Honor, with all due respect, it's because the legislative history and all the courts, including the Supreme Court, to address this issue, that's the way they've ruled. The case that counsel does not address, and I would respectfully ask this court to grapple with, is the Gray decision. It's 790 F. Second. It's the case, the Sixth Circuit case, that went up to the Supreme Court. And again, that's the language that I cited, which I think is detrimental, devastating even to the government's situation. It's saying what pre-McNally case law was, misconduct of a fiduciary in the administration of exclusively private matters, miscapacity as a private individual which is not involved in misuse of public office or public trust, is not actionable as a violation under this theory. That's exactly what the pre-McNally law was. All the cases that the government's citing, these circuit court opinions that are unanimous, are unanimous on the same thing that this court has previously decided in Bohonas. And that is that in the employee, corporate disloyalty situation, that fiduciary relationship, yes, this theory applies. That's clear. This court in Frega, it's the only decision to address post-McNally, narrowly held after looking at the legislative history that 1346 applies to public corruption cases only. If I could only say a little bit about the Moldova victim, Your Honors, I think it's, I would ask the court to look at that video. That's the gentleman five years after the fact. That is not the gentleman. There's no evidence of what he was like five years earlier at the time of these incidents. So it has no bearing. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Kleinfeld, Graber